UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STEVEN MOSINSKI,

          Plaintiff,

      V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.

**REPORT AND RECOMMENDATION**

09-CV-944
(GLS/VEB)

## I. INTRODUCTION

In December of 2005, Plaintiff Steven Mosinski applied for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff alleges that he has been unable to work since July of 2002, due to the symptoms of Crohn's disease. The Commissioner of Social Security denied Plaintiff's applications. Plaintiff, by and through his attorney, Richard A. Altman, Esq., filed this action seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On December 22, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 21).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for DIB and SSI benefits on December 22, 2005, alleging disability beginning on July 26, 2002. (T at 42-44).[1] The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on April 1, 2008, before ALJ Carl E. Stephan. (T at 399). Plaintiff appeared, along with his attorney, and testified. (T at 402-408).

On May 19, 2008, ALJ Stephan issued a decision finding that Plaintiff was disabled during the period between July 26, 2002 and July 31, 2003. (T at 19). However, the ALJ further concluded that, beginning on August 1, 2003, medical improvement occurred, and that as of that date, Plaintiff was no longer disabled. (T at 23). On June 26, 2008, the ALJ issued an amended decision, in which he clarified his ruling with respect to Plaintiff's DIB application (specifically, he concluded that, while Plaintiff was disabled during the closed period between July 26, 2002 and July 31, 2003, he was not entitled to any award of benefits for that period). (ST at 410-422).[2]

The Appeals Council issued a decision on July 7, 2009, denying Plaintiff's request for review. (T at 3-6). The Appeals Council's decision references the ALJ's initial decision of May 19, 2008, but not the amended decision issued on June 26, 2008. (T at 3). The record indicates that the brief submitted to the Appeals Council by Plaintiff's counsel was submitted on August 29, 2008, after the amended decision was issued. (T at 6). Plaintiff's counsel states in his supporting Brief that the Appeals Council was asked to review the amended decision, but does not address the fact that the Appeals Council referenced the

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 6).

[2] Citations to "ST" refer to the Supplemental Transcript. (Docket No. 17).

earlier decision. (Docket No. 12, at p. 1). Given that none of the parties has raised this as an issue (for example, Plaintiff has not argued that the Appeals Council failed to review the amended decision), this Court will proceed as if the Appeals Council's decision denying Plaintiff's request for review included a consideration of the amended decision.

In any event, the aspect of the ALJ's decision at issue in this case is the denial of benefits for the period starting on August 1, 2003. Plaintiff does not challenge the ALJ's conclusion that Plaintiff was disabled, but not entitled to benefits, for a closed period of time prior to that date. This was the aspect of the ALJ's decision clarified by the amended decision (*i.e.* whether Plaintiff was entitled to either DIB or SSI benefits for the closed period of disability). Rather, Plaintiff argues that the ALJ erred by finding that he experienced medical improvement as of August 1, 2003, and was therefore not disabled after that date. The original decision and amended decision do not materially differ with respect to this issue. As such, even if one were to consider the original decision as the ALJ's "final" decision for purposes of this Court's review, it would not affect the outcome of the case.

Plaintiff timely commenced this action by filing a Complaint on August 18, 2009. (Docket No. 1). The Commissioner interposed an Answer on December 15, 2009. (Docket No. 7). Plaintiff filed a Brief in support of the action on March 12, 2010. (Docket No. 12). The Commissioner filed a Brief in opposition on June 3, 2010. (Docket No. 18). Plaintiff, with leave of the Court, filed a Reply Brief on June 17, 2010. (Docket No. 20).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and that judgment be entered in favor of the Commissioner.

### III. DISCUSSION

#### A. Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.  Analysis

### 1.  Commissioner's Decision

The ALJ concluded that Plaintiff met the insured status requirements of the Social Security Act as of July 26, 2002, the date he became disabled.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since that date.  The ALJ determined that as of the date of the amended decision, Plaintiff had the following impairment considered severe under the Act: Crohn's disease. (ST at 417).

The ALJ found that from July 26, 2002, through July 31, 2003, the severity of Plaintiff's impairment equaled the criteria of several impairments set forth in the Listings (namely, §§ 7.17, 13.05B, 13.06, 13.07, and 13.28). (ST at 418).  As such, the ALJ concluded that Plaintiff was under a disability during that closed period of time. (ST at 418).

However, the ALJ determined that Plaintiff experienced medical improvement as of

---

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

August 1, 2003, and that Plaintiff's disability ended on that date. (ST at 418).  The ALJ opined that, as of that date, Plaintiff's impairment did not meet or medically equal any of the impairments set forth in the Listings. (ST at 419).

Accordingly, the ALJ determined that, as of the date of medical improvement, Plaintiff had the residual functional capacity to perform light work. (ST at 419).  Likewise, the ALJ found that, as of that date, Plaintiff could perform his past relevant work as a floral designer. (ST at 421).

While the ALJ noted that Plaintiff was disabled between July 26, 2002, and August 1, 2003, he concluded that Plaintiff was not entitled to a DIB award for that closed period of time. (ST at 421).  Plaintiff's DIB application was filed on December 8, 2005, and (the ALJ noted) benefits can only be afforded retroactively for a period of one-year prior to the application date.  Because the ALJ found Plaintiff was not disabled in December of 2004 (*i.e.* one year prior to the application date), he concluded that Plaintiff was not entitled to a DIB award. (ST at 421-22).  The ALJ lastly noted that Plaintiff was not entitled to SSI benefits with respect to the closed period of disability.  SSI benefits can only be awarded beginning with the month after the month in which the application is filed.  Because the ALJ concluded that Plaintiff was not disabled when he applied for SSI benefits in December of 2005, he found that Plaintiff was not entitled to SSI benefits either. (ST at 421-22).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers three (3) principal arguments in support of his position.  First, he contends that his Crohn's disease is a *per se* disabling impairment.  Second, Plaintiff argues that the ALJ's determination that medical improvement occurred as of August 1, 2003, was arbitrary and

capricious. Third, Plaintiff contends that the ALJ erred by finding that Plaintiff was able to perform his past relevant work. This Court will address each argument in turn.

### a. Crohn's Disease

The ALJ concluded that Plaintiff's Crohn's disease was a severe impairment and that, for a closed period of time, the impairment rendered Plaintiff disabled under the Act. (ST at 417). However, the ALJ further found that Plaintiff experienced medical improvement following non-embryonic stem cell treatment and that, as of August 1, 2003, Plaintiff was no longer disabled. (ST at 418-19). The ALJ noted Plaintiff's "long history of Crohn's disease" and acknowledged that the condition caused him to "experience pain and frequent bowel movements." (ST at 421). Nevertheless, the ALJ concluded that Plaintiff's symptoms had "markedly improved" since the stem cell treatment and that Plaintiff had the residual functional capacity to perform light work, provided he had ready access to bathroom facilities. (ST at 421).

Plaintiff challenges this conclusion, arguing that Crohn's disease "is disabling in and of itself, almost automatically entitling a claimant to benefits." (Docket No. 20, at p. 2). In this regard, Plaintiff is partially correct when he points out that, when the application for benefits was filed, Crohn's disease was an impairment implicitly described in § 5.07 of the Listings. See Vasquez v. Astrue, No. 06-Civ-7890, 2009 WL 7039913, at *4 (S.D.N.Y. June 19, 2009). Although that section of the Listings did not specifically refer to "Crohn's disease," it was entitled "regional enteritis," a term considered synonymous with Crohn's

disease. Id.; see also Sales v. Apfel, 188 F.3d 982, 984 (8th Cir. 1999).[4]

Impairments listed in Appendix 1 of the Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets

---

[4]The Social Security Administration amended the Listings as they related to digestive diseases effective December 19, 2007. See *Rev'd Medical Criteria for Evaluating Digestive Disorders*, available at http://www.federalregister.gov/articles/2007/10/19/E7-20235/revised-medical-criteria-for-evaluating-digestive-disorders#h-4 (last accessed March 3, 2011).

Section 5.06 of the Listings is now entitled "inflammatory bowel disease." Section 5.00 (E) of the Listings explains that "Inflammatory bowel disease (5.06) includes, but is not limited to, Crohn's disease." The parties offer no argument as to whether this Court should apply the Listing in effect at the time the application was filed in 2005 (prior to the amendment) or the Listing in effect at the time the Commissioner's decision became final in 2009 (after the effective date of the amendment).

If the post-amendment Listing applies, Plaintiff cannot prevail because his impairment does not meet the requirements of new § 5.06, which involves either "hospitalization for intestinal decompression or . . . surgery, . . . occurring on at least two occasions at least 60 days apart within a consecutive 6-month period" or at least two of the following "despite continuing treatment as prescribed and occurring within the same consecutive 6-month period":

> 1. Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or
> 2. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or
> 3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
> 4. Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
> 5. Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or
> 6. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 5.06.

9

or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing. See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

In this case, Plaintiff contends that his impairment met § 5.07 (a) of the Listings, as they were in effect at the time of the application for benefits. Under this subsection, regional enteritis "qualifies as a listed impairment if it also presents '[p]ersistent or recurrent intestinal obstruction evidenced by abdominal pain, distention, nausea, and vomiting and accompanied by stenotic areas of [the] small bowel with proximal intestinal dilation." Sales, 188 F.3d at 984.

The ALJ concluded that Plaintiff's impairment did not meet or medically equal Listing § 5.07. (ST at 419). As noted above in footnote 4, there is a question (unaddressed by the parties) as to whether former § 5.07 applies (because it was in effect when the benefits application was filed) or its successor, § 5.06 (because it was effective when the Commissioner made his final decision). This Court need not resolve this issue. As discussed in that footnote, Plaintiff's impairment does not satisfy the requirements of the successor section (*i.e.* §5.06). For the reasons outlined below, this Court finds that the ALJ's conclusion that Plaintiff's impairment did not meet or medically equal former § 5.07 was supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion." Richardson, 402 U.S.at 401. As such, Plaintiff's impairment does not meet or medically equal the applicable listing regardless of which Listings are used in the analysis.

A July 2004 report from Dr. Robert Craig, a treating doctor with the Department of Gastroenterology at Northwestern University, described Plaintiff as "considerably better than a year ago." (T at 132). Plaintiff's symptoms were characterized as "much better" and his colonoscopy was noted to show "considerable improvement" albeit with "some ulcerations present." (T at 132). A small bowel x-ray showed "moderately severe inflammation covering a fairly large segment of bowel," but it was "not badly strictured." (T at 132). Dr. Craig described himself as "delighted" with Plaintiff's overall response and noted that Plaintiff was not taking any medication to treat his Crohn's disease. (T at 132).

Another treatment note from the same time period described Plaintiff as having "mild signs of active Crohn's disease" with diarrhea approximately 3 times per day and blood in the stool approximately every 3 days. (T at 219).

In January of 2006, Dr. Rodney Camp, a treating physician, described Plaintiff's Crohn's disease as "mild" and opined that Plaintiff could stand/walk for up to 6 hours per day, sit for up to 6 hours per day, had no limitations with regard to pushing and/or pulling, and no postural, manipulative, visual, communicative, or environmental limitations. (T at 268, 273).

Dr. Soo Park performed a consultative examination in May of 2006. Dr. Soo assessed no limitation as to lifting, bending, walking, standing, carrying, and going up stairs. (T at 283).

Plaintiff testified that he works part-time with his wife as a partner in a floral design business. (T at 402-03). As of the date of the hearing, Plaintiff was not taking any medication for his condition. (T at 406). He had last seen a doctor for his condition at some point during the prior year and he explained that his work was "a little hard" to perform because of his frequent need to use the bathroom. (T at 408).

Further support for the ALJ's assessment is found in the analysis of non-examining State Agency review physician Donna M. White, who reviewed Plaintiff's medical records, and noted no documented episodes of obstruction or weight loss. (T at 286). Dr. White opined that Plaintiff could lift/carry 20 pounds occasionally, stand/walk for about 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. (T at 286). Dr. White noted that Plaintiff would need ready access to bathroom facilities. (T at 286).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2);

see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of these examining and non-examining State agency medical consultants are supported by the weight of the evidence. See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

In light of the foregoing, this Court finds no reversible error with respect to the ALJ's determination that Plaintiff's impairment did not meet or medically equal Listing § 5.07. The ALJ's overall conclusion, that Plaintiff's Crohn's disease was limiting, but did not preclude light work activity with ready access to bathroom facilities, was supported by substantial evidence. Plaintiff has also not established that his impairment satisfied all of the elements required to meet or medically equal Listing § 5.07. Plaintiff has also offered no support for his claim that Crohn's disease is disabling *per se*. The cases cited by Plaintiff establish that Crohn's may be a disabling impairment when the other requisites of Listing § 5.07 are satisfied. See, e.g., Sales, 188 F.3d at 985. However, there is no authority to support the suggestion that being diagnosed with Crohn's disease and suffering symptoms typical of that malady, without more, automatically renders a claimant disabled under the Social Security Act.

### b.   Date of Medical Improvement

As noted above, the ALJ concluded that Plaintiff's symptoms had "markedly

13

improved" since he underwent non-embryonic stem cell treatment in July of 2002. (ST at 421). The ALJ determined that, as of August 1, 2003, Plaintiff's condition was no longer disabling. (ST at 418). Plaintiff argues that the selection of this date was arbitrary and capricious. This Court finds Plaintiff's argument unavailing.

Contrary to Plaintiff's suggestion, the ALJ did not find that Plaintiff's Crohn's disease "magically disappeared" on August 1, 2003. Rather, the ALJ acknowledged Plaintiff's continuing impairment resulting from Crohn's disease, but found that the symptoms had improved to a non-disabling point. The date of August 1, 2003 was selected by the ALJ as the latest possible date on which Plaintiff experienced medical improvement sufficient to render his impairment non-disabling. Dr. White, the non-examining State Agency review doctor indicated that an argument could be made for medical equivalence to a listed impairment through July 31, 2003. (T at 287). The ALJ gave Plaintiff the maximum benefit of this inference in selecting the August 1, 2003 date, even though there was evidence in the record to suggest medical improvement occurred prior to that date.

For example, in January of 2003, Dr. Craig described Plaintiff as experiencing "considerable improvement" with regard to his symptoms, notwithstanding "some diarrhea," "perianal distress," and "some abdominal distress." (T at 157). Dr. Craig noted that Plaintiff was "no longer on any Crohn [*sic*] disease specific therapy." (T at 158). A treatment note from May of 2003 indicated that while Plaintiff experienced "some nausea" and frequent diarrhea, he reported "no abdominal pain" or weight loss. (T at 151). A small bowel x-ray performed on May 30, 2003, revealed no evidence of obstruction. (T at 145). On June 2, 2003, Dr. Craig noted ongoing symptoms related to Plaintiff's Crohn's disease, but indicated that Plaintiff's "bowel habit" had "for the most part, returned to normal." (T at 142).

In light of the foregoing, the ALJ could have reasonably selected an earlier date as the date of medical improvement. His selection of August 1, 2003, which was based upon a generous reading of Dr. White's assessment (generous to Plaintiff), was not arbitrary and capricious and, in fact, afforded Plaintiff the maximum benefit of the doubt in terms of the date of medical improvement. Although Plaintiff has pointed to evidence documenting continued Crohn's disease symptoms after that date, the fact that Plaintiff continues to suffer symptoms is not at issue. Plaintiff has not undermined the overall assessment of the ALJ that, while Plaintiff's condition continued to be limiting, as of August 1, 2003 (at the latest) he had the residual functional capacity to perform light work, provided he had ready access to bathroom facilities. Accordingly, this Court finds no reversible error with regard to this aspect of the ALJ's decision.

### c. Past Relevant Work

The ALJ concluded that Plaintiff could perform his past relevant work as a floral designer as it is generally performed in the economy. (ST at 421). Specifically, the ALJ noted that Plaintiff's position corresponded to the position of floral designer in the Dictionary of Occupational Titles ("DOT") and referenced DOT code 142.081-010. This position is customarily performed at light exertional levels, which the ALJ noted was consistent with Plaintiff's RFC. (ST at 421).

Plaintiff challenges this conclusion and argues that the position of floral designer, as he performs it, is much more strenuous than the position described by the DOT. He points to testimony, in which Plaintiff indicated that he finds full-time work as a floral designer in the business that he co-owns with his wife too fatiguing and difficult to manage due to his symptoms. This argument is without merit. "[I]n the fourth stage of the SSI inquiry, the

15

claimant has the burden to show an inability to return to her previous specific job *and an inability to perform her past relevant work generally.*" Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir.2003) (citing SSR 82-62)(emphasis added).

In other words, a claimant is not disabled if he can perform his past relevant work, either as he actually performed it, or as it is generally performed in the national economy. See SSR 82-61; Jock v. Harris, 651 F.2d 133, 135 (2d Cir.1981) (noting that "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally").

"Determination of the claimant's ability to perform past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy." Speruggia v. Astrue, No. 05-CV-3532, 2008 WL 818004, at *12-*13 (E.D.N.Y. Mar.26, 2008).

In this case, the ALJ appropriately used the DOT to establish the work requirements of a floral designer as generally performed in the economy. Plaintiff has not established an inability to perform such work as it is generally performed (as noted above, the DOT indicates that the work of a floral designer generally involves work at the light level of exertion). Thus, even if Plaintiff cannot perform his past relevant work (and current part-time work) as he actually performed it, this does not render the ALJ's analysis defective.

Moreover, for the reasons stated above, the ALJ's overall assessment of Plaintiff's

16

RFC is supported by substantial evidence and in accord with applicable law. While Plaintiff undeniably suffers from limitations related to his Crohn's disease, the medical assessments and clinical findings demonstrate medical improvement sufficient to support the ALJ's determination in this case. As previously discussed, a treating physician, consultative examiner, and State Agency review physician all found little to no physical limitations, other than the need for ready access to restroom facilities. Clinical tests and treatment notes documented significant improvement with a mild overall presentation. For this reason, this Court finds no reversible error with regard to either the ALJ's assessment of an ability to perform light work or his finding that Plaintiff could perform the work of a floral designer as it is generally performed in the economy.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers and the non-examining State Agency review physician, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   March 7, 2011
         Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**

Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).


SO ORDERED.
March 7, 2011

*[signature]*

Victor E. Bianchini
United States Magistrate Judge